## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0930

JESSICA EVERETT

VERSUS

NICHOLLS STATE UNIVERSITY

*DATE OF JUDGMENT:* **FEB 2 6 2020**

ON APPEAL FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
NUMBER 128042, DIVISION B, PARISH OF LAFOURCHE
STATE OF LOUISIANA

HONORABLE STEVEN M. MILLER, JUDGE

* * * * * *

Christopher S. Suba
James R. Clary, Jr.
Casey D. Neale
Christopher T. Freyder
Briton J. Myer
Baton Rouge, Louisiana

Jose' Carlos Mendez
Geraldine Broussard-Baloney
Abril Southerland
New Orleans, Louisiana

Counsel for Plaintiff-Appellant
Jessica Everett

Counsel for Defendant-Appellee
Nicholls State University

* * * * * *

BEFORE: MCDONALD, THERIOT, AND CHUTZ, JJ.

**Disposition: AFFIRMED.**

**CHUTZ, J.**

In this slip and fall case, plaintiff, Jessica Everett, appeals a summary judgment dismissing her suit against defendant, Nicholls State University (Nicholls). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On September 8, 2014, plaintiff was walking through a second-story hallway in Powell Hall on Nicholls' campus on her way to a class. She slipped on some water on the floor and fell hard on her right knee. As she attempted to get up, she again slipped and fell on her buttocks.

It was later determined that a HVAC unit and/or the main drain from the unit, which was located on the floor above, had clogged and caused water to leak and drip through the ceiling down to the second-floor hallway below. The resulting puddle was described as being "a small amount of water." There were no signs posted warning of the wet floor.

Plaintiff filed a personal injury suit against Nicholls, alleging she sustained serious injuries as a result of her accident, including a sprained right ankle and a ligament tear. After discovery was conducted, Nicholls filed a motion for summary judgment alleging plaintiff lacked factual support to establish the essential elements of her claim, including notice of any defect. Following a hearing on Nicholls' motion, the district court took the matter under advisement. On March 26, 2019, the district court signed a judgment granting the motion for summary judgment and dismissing plaintiff's suit. In its written reasons for judgment, the district court concluded plaintiff failed to offer any evidence that Nicholls had actual knowledge of the leak or that the water was on the floor for a sufficient amount of time to constitute constructive knowledge. Plaintiff now appeals.

2

## SUMMARY JUDGMENT LAW

A motion for summary judgment shall be granted only if the motion, memorandum, and supporting documents admitted for purposes of the motion for summary judgment show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4). In determining whether summary judgment is appropriate appellate courts review evidence *de novo* under the same criteria that govern the district court's determination of whether summary judgment is appropriate. *Alvarado v. Lodge at the Bluffs, Inc.*, 16-0624 (La. App. 1st Cir. 3/29/17), 217 So.3d 429, 432, writ denied, 17-0697 (La. 6/16/17), 219 So.3d 340.

The burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial on the matter before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual evidence sufficient to establish the existence of a genuine issue of material fact, the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Alvarado*, 217 So.3d at 432.

## DISCUSSION

Plaintiff contends the district court erred in granting summary judgment because all she was required to prove to defeat the motion was that the defect or unreasonably dangerous condition existed for *some* period of time. She maintains this burden was met merely by showing the defect or unreasonably dangerous condition existed at the time of her fall. Further, plaintiff argues Nicholls also had constructive notice of the unreasonably dangerous condition in Powell Hall because

3

of the formal and informal inspections it conducted in that building. Specifically, plaintiff argues that if these inspections had been properly conducted, Nicholls would have been put on notice of the stained and leaking ceiling tile that caused water to leak on the floor of Powell Hall on the day of her accident.

Regardless of whether plaintiff's claims are based on La. C.C. art. 2315 or art. 2317, in order to establish Nicholls was liable for her alleged injuries, plaintiff was required to prove: (1) Nicholls had custody of the HVAC unit and/or Powell Hall; (2) the HVAC unit and/or Powell Hall were defective because they had a condition that created an unreasonable risk of harm; (3) Nicholls had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was a cause in fact of the alleged damages. See La. R.S. 9:2800(C); *Fontenot v. Patterson Insurance*, 09-0669 (La. 10/20/09), 23 So.3d 259, 267-68; *Clark v. East Baton Rouge Parish Department of Public Works*, 17-1445 (La. App. 1st Cir. 4/6/18), 248 So.3d 409, 412. Plaintiff's failure to meet any one of these essential elements defeats her claim against Nicholls. See La. C.C.P. art. 966(D)(1); *Lynch v. City of Mandeville*, 14-1834 (La. App. 1st Cir. 6/5/15) (unpublished), 2015 WL 3546068, at *3.

The record is devoid of any evidence that Nicholls had actual notice in this case. Plaintiff concedes the sole issue before this court on appeal is whether Nicholls had constructive notice of the unreasonably dangerous condition on its premises. Louisiana Revised Statutes 9:2800(D) defines "constructive notice" as "the existence of facts which infer actual knowledge." Constructive knowledge may be shown by facts demonstrating the defect or condition existed for such a period of time that it would have been discovered and repaired had the public body exercised reasonable care. A public entity is considered to have constructive knowledge if it "knew or should have known" of the defective condition. *Clark*, 248 So.3d at 414.

4

In support of its motion for summary judgment, Nicholls offered evidence that Powell Hall was inspected on a quarterly basis and that the last inspection, which was conducted less than two weeks before plaintiff's accident, noted no problems or areas of concern. Nicholls' safety director, Brian Clausen, indicated in his deposition that inspections included looking at the ceiling tiles, and that a stained ceiling tile would be an area of concern noted in the inspection report. In addition to the quarterly inspections, Nicholls presented evidence that custodians were constantly cleaning in Powell Hall and were instructed to remain vigilant for and to report potential hazards. Nicholls conducted periodic training classes for its employees in how to reduce the risk of slips, trips, and falls.

Both Mr. Clausen and Chad Legendre, Nicholls' HVAC foreman and assistant facilities maintenance manager, testified in their depositions that they knew of no HVAC problems or stains on any ceiling tiles in Powell Hall prior to plaintiff's accident. They also were unaware of any similar "spills" being reported in Powell Hall around the time of plaintiff's accident. In his affidavit, Mr. Clausen specifically stated all safety inspections conducted around the time of plaintiff's accident "reflect there were no leaks, spills, HVAC problems, signs thereof, such as water stains, or any other problem in Powell Hall."

In her deposition, plaintiff testified she did not see the water on the floor as she walked down the hallway prior to her accident. She stated there was nothing to indicate there was any problem in the hallway. Plaintiff did not look up at the ceiling as she was walking and could not recall if she saw any Nicholls employees in the area prior to her accident.

Despite having presented no evidence as to how long the water was on the hallway floor, plaintiff argues the fact that she slipped and fell on a foreign substance (water) "is dispositive that the substance itself had been in existence for some period of time prior to her fall, imputing constructive notice" to Nicholls. She asserts the

presence of the foreign substance for even the "briefest of moments" was all that was required to defeat summary judgment because the issue of whether the period of time was sufficiently lengthy that a defendant should have discovered the condition "*is necessarily a fact question.*" Accordingly, she argues a genuine issue of fact exists as to whether Nicholls possessed constructive notice of any defect in the HVAC unit or the presence of water on the hallway floor.

We disagree with plaintiff's contention. It is true that a plaintiff is not required to establish the *precise* amount of time in minutes or hours that a defect or unreasonably dangerous condition existed. See *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So.2d 1081, 1084-85. Nevertheless, in order to establish constructive notice it must be proven that the defect or condition causing the injury existed over a sufficient length of time to establish that reasonable diligence would have led to its discovery and repair. See *Lynch*, 14-1834 at p. 3, 2015 WL 3546068, at *3; *Stevens v. City of Shreveport*, 49,437 (La. App. 2d Cir. 11/19/14), 152 So.3d 1071, 1078, writ denied, 15-0197 (La. 4/17/15), 168 So.3d 399. In *White*, 699 So.2d at 1084, the Louisiana Supreme Court explained that "[a] claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice." Thus, in order to show a genuine issue of material fact existed as to whether Nicholls possessed constructive notice, plaintiff was required to present some evidence that the HVAC had been leaking or water was present on the hallway floor for a sufficient amount of time that Nicholls should have discovered and corrected the problem. See *Lynch*, 14-1834 at p. 3, 2015 WL 3546068, at *3; *Stevens*, 152 So.3d at 1078; see also *White*, 699 So.2d at 1084. Plaintiff failed to meet this burden.

Plaintiff argues the water-stained ceiling tiles on the second floor of Powell Hall were a visible sign of the HVAC leak that should have been discovered through

Nicholls' daily[1] and quarterly inspections, the most recent quarterly inspection having been conducted shortly before plaintiff's accident. Moreover, according to plaintiff, Nicholls employees should have easily discovered the stained ceiling tiles through which the water leaked since one tile "was saturated to the point that it was visibly about to fall." In support of her position, plaintiff relies primarily on the deposition testimony of Mr. Legendre, which she argues establishes that the ceiling tile from which the leak occurred was so saturated from continuous water leakage that it was on the verge of collapse.

Plaintiff's reliance is misplaced. During his deposition, Mr. Legendre was shown photographs of ceiling tiles, including photos with a missing spot where one ceiling tile had been removed. The photographs were taken sometime the day after plaintiff's accident. Mr. Legendre admitted that the removed ceiling tile and the tiles adjacent to it appeared to have dried water stains. However, Mr. Legendre further indicated the purported water stains could have resulted from a single leak and the ceiling tiles could have dried out overnight. There was no evidence to establish the water stains indicated a continuous leak over a period of time.

Plaintiff also relies on the portion of Mr. Legendre's deposition where he was asked whether the missing ceiling tile had been removed because it was saturated, and he replied, "It was probably fixing to fall." Yet, the record indicates Mr. Legendre dispatched an employee when the leak was reported, and he did not go to the scene of the accident himself. He was not involved in diagnosing or repairing the HVAC or removing the ceiling tile. Thus, Mr. Legendre had no personal knowledge concerning the condition of the ceiling tile at the time of the accident and whether it was saturated with water, having merely seen a picture of the ceiling tile taken the day after the accident. Under the circumstances, his testimony that the ceiling tile

---

[1] There was no evidence that formal, daily inspections were conducted at Powell Hall. The referred to "daily" inspections are an apparent reference to the evidence indicating Nicholls employees were trained to look for hazards and the building custodians, who were constantly cleaning in the building, were instructed to remain vigilant for hazards.

7

was "probably fixing to fall" was mere speculation. Speculation falls far short of the factual support required to establish an evidentiary burden of proof at trial. It takes more than mere argument of a possibility to raise a genuine issue of fact. See *Lynch*, 14-1834 at p. 4, 2015 WL 3546068, at *4.

Moreover, even if the ceiling tile was saturated with water at the time of plaintiff's accident, plaintiff presented no evidence showing the length of time the tile was in that condition. There also was no evidence as to how long the HVAC unit was leaking prior to plaintiff's accident, or even that the water stains on the ceiling tiles existed prior to the accident. Neither plaintiff nor anyone else reported seeing water stains on the ceiling tiles prior to the accident. The photographs of the purported water stains were not taken until the day after the accident. Plaintiff failed to carry her burden of showing there were visible signs of the HVAC unit leak that Nicholls should have discovered through either its informal daily or formal quarterly inspections so as to impute constructive notice thereof.

Once Nicholls pointed out an absence of factual support for an essential element of plaintiff's claim, actual or constructive notice, the burden shifted to plaintiff to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Nicholls was not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). Based on our *de novo* review, we find no error in the district court granting summary judgment in favor of Nicholls. Plaintiff failed to present evidence that the HVAC unit leak existed or that water was present on the hallway floor for such a period of time *prior to her accident* that Nicholls had actual or constructive notice of the unreasonably dangerous condition in Powell Hall or an opportunity to take corrective measures prior to plaintiff's accident. Due to the lack of evidence as to actual or constructive notice by Nicholls, the district court was

8

correct in its determination that there existed no issue of material fact precluding summary judgment in Nicholls' favor.[2]

## CONCLUSION

For the above reasons, the summary judgment in favor of defendant, Nicholls State University, dismissing the suit of plaintiff, Jessica Everett, is hereby affirmed. All appeal costs are assessed against plaintiff.

**AFFIRMED.**

---

[2] In plaintiff's reply brief, she requests this court hold counsel for Nicholls in contempt of court for violating Uniform Rules, Courts of Appeal – Rule 2-12.2(C) by using "insulting and outright offensive adjectives" in describing plaintiff's physical person and academic record. Rule 2-12.2(C) provides, in pertinent part, that an appellate brief "shall be courteous" and "free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person." Rule 2-12.2(C) further provides that any violation thereof subjects the author(s) of the brief to being held in contempt of court and to having such brief returned. Initially, we note that several of the terms to which plaintiff counsel took exception occurred in a district court pleading rather than in Nicholl's appellate brief. We will not consider these instances since Rule 2-12.2 applies only to the preparation of appellate briefs. As to the remaining instances, although we question whether the remarks in Nicholls' brief utilizing the objected-to terms were relevant to any issue raised in this appeal, we nevertheless find the terms either not to be offensive or not to be so offensive as to constitute a violation of Rule 2-12.2(C). Accordingly, we deny plaintiff's request that Nicholls be held in contempt and its brief returned.